IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RACHEL R.,[1]                         )
                                      )
              Plaintiff,              )
                                      )
v.                                    )   Case No. 25-cv-375-RJD[2]
                                      )
COMMISSIONER of SOCIAL SECURITY,      )
                                      )
              Defendant.              )
                                      )

## ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff first applied for DIB in November 2020 and SSI in February 2021, alleging an onset date of June 23, 2020.  Tr. 332.  After holding an evidentiary hearing on October 24, 2023, ALJ Lisa Leslie denied the application on December 27, 2023.  Tr. 332, 337.  On January 22, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final and subject to judicial review.  Tr. 1.  Plaintiff filed a timely Complaint with this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Order due to privacy concerns. *See* Advisory Committee Notes to Fed. R. Civ. P. 5.2(c).

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties.  Docs. 10, 20.

**Issues Raised by Plaintiff**

Plaintiff contends that the ALJ erred in formulating her residual functional capacity ("RFC") by failing to account for Plaintiff's seizures and migraine headaches, and failed to incorporate a restriction determined appropriate by an agency physician.

**Applicable Legal Standards**

To qualify for DIB and SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations. The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404; the process contained in the regulations for determining SSI eligibility is identical in all aspects relevant to this case, so the Court will refer to the DIB regulations for conciseness. A person is disabled if she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) is the claimant doing substantial gainful activity?; (2) does the claimant have a severe medically determinable physical or mental impairment?; (3) does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?; (4) is the claimant able to perform his former occupation?; and (5) is the claimant able to perform any other work? 20 C.F.R. § 404.1520(a)(4). An affirmative answer at step 1 or step 4 or step 5 precludes a finding of disability. *Id.*

This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Tutweiler v. Kijakazi*, 87 F. 4th 853, 857 (7th Cir.

Page **2** of **13**

2023) (internal citations and quotations omitted).  Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2023) (internal citations and quotations omitted).    However, the undersigned does not act as a rubber stamp for the Commissioner.  *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). There must be a "logical bridge" between the ALJ's conclusion and the evidence.  *Hess v. O'Malley*, 92 F. 4th 671, 676-77 (7th Cir. 2024) (*citing Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020)).

### The Decision of the ALJ

The ALJ followed the required five-step analytical framework.  She determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of June 23, 2020.  Tr. 335.  She determined that Plaintiff had the following severe impairments: remote history of intracerebral hematoma (hereinafter, "brain injury"), seizure disorder, degenerative disc disease of the cervical spine, and mixed anxiety and depressive disorder.  Tr. 335.  However, she found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the applicable regulations.  Tr. 19.

The ALJ determined that Plaintiff had the following RFC:

[She can] perform a full range of work at all exertional levels but with the following non-exertional limitations: she cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs….cannot balance on narrow, slippery, or erratically moving surfaces and she is limited to

occasional overhead reaching bilaterally…cannot work at unprotected heights or around hazardous machinery. She can maintain the concentration required to understand, remember, and carry out simple and routine tasks; she cannot work at a fast pace such as an assembly line but can stay on task and meet reasonable production requirements in an environment that allows her to maintain a flexible and goal-oriented pace. [She] is limited to work that requires only occasional changes in the work setting which are introduced gradually. She can have occasional interaction with co-workers, but the work must not involve tandem tasks. [She] can occasionally interact with supervisors, and she can have occasional superficial interaction with the public, such as providing limited information in response to questions but the work must not involve things like handling customer complaints or responding to customer questions as a primary component of the job.

Tr. 338-339. The ALJ concluded that Plaintiff was not capable of performing past relevant work, but there are jobs that exist in significant numbers in the national economy that the claimant can perform. Tr. 345.

## The Evidentiary Record

The following summary of the record is tailored to Plaintiff's arguments.

### 1.    Medical records

In August 2019, Plaintiff was referred to a neurologist because of "possible complex partial seizures" and "memory loss." Tr. 862. The neurologist's notes indicate that Plaintiff was in a car accident in May 2018 and underwent surgery for a fractured jaw in December 2018. Tr. 876, 882. Plaintiff reported to the neurologist that "she had passed out and fell and that [led] to a left skull fracture…since then she started to have decreased memory, dizziness, trouble with coordination and balance." Tr. 862. Plaintiff also reported that she has "episodes that her head pulls to the left, her eyes pull to the left and she gets an abnormal feeling….that she can't describe….afterwards she is exhausted for the rest of the day." Tr. 863. The neurologist increased Plaintiff's Keppra prescription and ordered an electroencephalogram ("EEG") and

magnetic resonance imaging ("MRI").   Tr. 863, 866.   The EEG Interpretation states "this is a normal EEG during wakefulness and drowsiness.   No epileptic discharges were seen.   A normal EEG does not rule out seizure and clinical correlation is recommended."   Tr. 887.

Plaintiff underwent the MRI and the radiologist compared the images to those from a May 2019 CT scan.   Tr. 852.   The radiologist listed three items in his Impression: (1) "focal encephalomalacia left frontal lobe as before"; (2) "6 mm nonspecific white matter lesion in the right frontal lobe"; (3) "no abnormal brain enhancement."   Tr. 853-53.

Plaintiff returned to the neurologist for a follow-up visit in October 2019.   Tr. 868.   The neurologist noted that she "discussed with patient getting a video EEG to establish if [her seizures] were epileptic versus nonepileptic….given her lack of response to therapy and lack of clear stereotyped events I suspect they may be nonepileptic…however she has suffered significant head injures with CNS damage which would put her at risk for seizures…will get an EEG to further characterize her events."   Tr. 868.   The neurologist further noted that Plaintiff "continues to have episodes of staring spells but other times more dizziness and confusion.   She seems to think that symptoms have worsened since we started her on Keppra."   Tr. 868.   The neurologist reviewed the MRI and noted "no results found."   Tr. 871.   The neurologist ordered Lamictal and planned "to decrease [Plaintiff's] Keppra when she gets to a therapeutic dose of Lamictal."   Tr. 868.

Plaintiff had a telephone consultation with the neurologist in June 2020.   Tr. 873.   The neurologist noted that Plaintiff said "she has been having multiple episodes of losing time and she feels as if her brain is being damaged similar to what it was during her injury….she feels she still has events she would characterize as seizures but gives a vague description of them. She is not able to address how often they occur but notes that it is frequent."   Tr. 873.   The neurologist

noted as follows:

> Patient did not get the video eeg I had ordered and seems reluctant to get a routine eeg. I suspect [the seizures] are non epileptic given they are refractory to 2 seizure medicines and she is not able to address the semiology [sic]. However given her history of traumatic brain injury she is certainly at risk of epilepsy. Unfortunately I was not able to satisfy what she was looking for in regard to treatment. I do think she has obviously suffered a significant neurologic injury but many of her current issues may be better served with appropriate cognitive behavioral therapy and counseling. Tr. 873.

On July 25, 2020, Plaintiff presented to the Alton Memorial Hospital Emergency Department, reporting that she felt like she was going to have a seizure. Tr. 833. The ED notes state that she "was in an accident and had a TBI in 2015" and took Keppra for seizures. Tr. 833. She was discharged that same day, but the records do not contain legible discharge instructions or a report of her condition at discharge. Tr. 833-845.

> Three days later days later, Plaintiff returned to the neurologist, who noted as follows:

> She apparently had an episode of anxiety, shakiness and seizure-type activity and was at the ER…she was treated with Ativan and had some improvement. She notes that she has been very tremulous since then. She notes significant symptoms of anxiety and nausea. She is worried that she will have to go back to the ER because of the symptoms.

> Discussed getting a video or ambulatory EEG to differentiate her spells between epileptic versus nonepileptic seizures. Patient would like to give them more consideration though.

> Will start patient on Seroquel to address her anxiety and insomnia.

Tr. 875.

The neurologist conducted a telephone appointment with Plaintiff on September 10, 2020. Tr. 880. She noted that Plaintiff was "evaluated today of recurrent events of being unable to think

Page **6** of **13**

speak and communicate.    She notes episodes happen every three days or so. She notes that she

has been suffering from significant anxiety."    Tr. 880.    The neurologist again recommended a

video EEG, but Plaintiff "was not able to get a video EEG due to her anxiety but will try to get an

ambulatory EEG to evaluate for epileptic activity."    Tr. 880.

Plaintiff continued to return to the neurologist.    In March 2021, the neurologist increased

her Lamictal prescription.    Tr. 886.    In June 2021, the neurologist noted that Plaintiff "may

benefit from a video EEG to better characterize her seizures" and "may consider increasing her

dosage [of Lamictal] but would like to get a drug level first."    Tr. 977. In September 2021, the

neurologist noted that Plaintiff was tolerating the Lamictal and "well appearing."    Tr. 1031.    She

continued to have "intermittent spells of trouble thinking and dizziness…we discussed that these

could be stress or her concern that they are seizures and a video EEG and she still does consider

that but has not decided to go for it yet."    Tr. 1031.

Plaintiff saw a nurse practitioner in the neurologist's office on May 2, 2022.    The nurse

practitioner noted the following history:

> She was last seen on 12/17/2021 by [the neurologist].    At that time
> [Plaintiff] was continuing to have some of her typical seizure type
> spells and tracking them in a log.    Treatment plan at that time
> included checking [Lamictal] level and CBC and CMP.
>
> Today [Plaintiff] feels very tired, nauseous, shaky.    She states that
> these symptoms are normal since the…TBI 5-6 years ago. She also
> feels her sleep is worse, she has no appetite, memory concerns.    She
> does not currently take any medication to assist with sleep.    She has
> tried melatonin in the past with no improvement in sleep
> noted….she is up and down all night and feels her seizure-like
> episodes make her tired all of the time.    May consider Seroquel.
> Will send note to psychiatrist to evaluate if he feels it is appropriate.
>
> Video EEG and new MRI brain ha[ve] been ordered in past by
> [neurologist] but [Plaintiff] continues to refuse.

> [Plaintiff] was offered speech therapy evaluation for memory concerns but declines at this time.
>
> She also feels constantly afraid of having another seizure. Treatment plan includes continuing [Lamictal]."

In February 2023, the neurology nurse practitioner noted the following:

> [Plaintiff] is being seen in the office today for migraines. [Plaintiff] was last seen on October 10, 2022. At that time, [Plaintiff] complained of 3 headaches per month. [Plaintiff] described the pain as tenderness if she brushes her hair. Treatment plan at that time included starting Ibuprofen 800 mg PRN, continuing Keppra and Lamictal.
>
> Plaintiff has been noticing stiffness in her neck. In the past week she is noticing a shooting pain into her temple. The pain lasts a minute. These pains only happen occasionally.
>
> Plaintiff was seen by her PCP who ordered an xray of cervical spine. The xray revealed degenerative disc disease. [Plaintiff]'s PCP provided options of orthopedist referral or physical therapy. She is still considering her options.
>
> Treatment plan includes continuing ibuprofen PRN, continuing Keppra and Lamictal. Next appointment in 8 months.

### 2.    Agency Records

Plaintifff completed a function report on May 5, 2021. Tr. 763. She reported that she did not drive, "per neurologist." Tr. 759. She did not prepare her own meals because she did "not feel safe enough anymore." Tr. 758. "Unexpected seizures…limit[ed] [her] ability to work." Tr. 756.

### 3.    Medical Opinions

Dr. Donna Hudspeth (agency psychologist) reviewed Plaintiff's medical records and issued a Disability Determination Explanation on July 6, 2021. Tr. 440-50. She found that Plaintiff

"should be able to meet the basic mental demands of competitive, remunerative 1-2 step tasks on a sustained basis, in setting of low social contact."  Tr. 450.  Three months later, Dr. Lionel Hudspeth (agency psychologist) reviewed Plaintiff's updated medical records and opined that medical evidence in the record indicated "sufficient cognitive, memory, and thought processing skills to retain the ability to understand, remember and carry out at least 2-3 step simple tasks." Tr. 484.

### 4.     Evidentiary Hearing

The ALJ conducted an evidentiary hearing on October 24, 2023.  Tr. 383.  Plaintiff testified that she does not drive because she could not comprehend traffic signs or remember directions.  Tr. 394-95.  She feels that she could not perform "even a very simple job" because "somebody could explain something, and [she] would have no idea…it wouldn't stick."  Tr. 396. Even if she did the same job every day, she would still need direction and reminders on how to perform that job each day.  Tr. 396.  Because of her forgetfulness, her mother assists her with nearly all activities of daily living.  Tr. 400-02.  She cannot participate in conversations because her brain "suddenly just stop[s]".  Tr. 404.

Plaintiff testified that she has "definitely" had seizures in the last year, approximately 3-4 a month.  Tr. 396-97.  She did not remember when she last had a seizure.  Tr. 397.  After she has a seizure, she is not oriented to place and time.  Tr. 397.  She must "lie down on the couch…like an empty shell, and that could last a day or into the next day."  Tr. 397.  She has debilitating migraines twice a week that make her delirious and nauseous.  Tr. 397.  She did not remember how long the migraines last, though.  Tr. 398.  When the migraine headaches occur, she has to be in "complete dark…everything has to be quiet."  Tr. 398.

Plaintiff's description of her previous employment led the vocational expert to conclude that her past work should be classified as "administrative assistant" which is a sedentary, light, skilled job.   Tr. 389, 393.   The ALJ posed the following hypothetical to the vocational expert:

> An individual of [Plaintiff's] age and education [and Plaintiff's ] past jobs… no exertional limitations.   No climbing of ladders, ropes, or scaffolds.   Occasional ramps and stairs.   No balancing on narrow, slippery, or erratically moving surfaces….occasional overhead reaching bilaterally.   No work at unprotected heights or around hazardous machinery…can maintain the concentration required to understand, remember, and carry out simple and routine tasks.   Cannot work at a fast pace such as an assembly line, but can stay on task and meet reasonable production requirements in an environment that would allow the individual to maintain a flexible and goal-oriented pace.   Limited to work that requires only occasional changes in the work setting which are introduced gradually….occasional interaction with coworkers, so the work must not involve tandem tasks….occasional interaction with supervisors.   And occasionally superficial interaction with the public such as providing limited information in response to questions, but the work must not involve things like handling customer complaints or responding to customer questions as a primary component of the job.

Tr. 407-08.   The vocational expert testified that the individual would not be able to perform Plaintiff's past work as an administrative assistant, but there are other jobs (including sedentary work) that are available.   Tr. 408, 409.   If the individual could never interact with coworkers, supervisors, or the public, all competitive work would be eliminated.   Tr. 411.   If the individual had to receive reminders for her job three times a day, and needed a supervisor to check to make sure she was on task three times a day, she could not obtain competitive work.   Tr. 411.   If she were off task 20% of the workday or absent more than one day per month, she also could not obtain competitive work.   Tr. 411.

**<u>Analysis</u>**

In her brief, Plaintiff argues at length that the RFC does not account for Plaintiff's limitations caused by seizures and migraines.   The ALJ found that Plaintiff's testimony regarding the severity of her seizures and migraines was not credible.   This Court will not remand on the basis of the ALJ's credibility determination unless   the determination was "patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2016).

Regarding Plaintiff's seizures, the ALJ found that the seizures were a serious impairment, noting "evidence of long-term anti-seizure medication management" and that Plaintiff regularly saw a neurologist.   Tr. 340.   Plaintiff contends the ALJ then failed to consider that she could not work full-time because she would be absent more than one day a month (having 3-4 seizures a month, and needing approximately 1-2 days to recover each seizure).   Relatedly, Plaintiff also argues that she could only perform sedentary work because of the risk that she would have a seizure while working.   However, the ALJ found that the record contradicted Plaintiff's claims that the seizures occur to the degree to which Plaintiff testified.   Tr. 341 ("there are fewer objective examination abnormalities in the record than what [Plaintiff's] allegations suggest).   Plaintiff's brain imaging was normal, but Plaintiff refused for nearly four years to obtain an EEG to assist her neurologist in determining the cause of her reported seizures.   Plaintiff's neurologist routinely noted normal neurological exams. Tr. 864-65, 870-71, 877-78, 884-85, 1027-28, 1034, 1105-06, 1111-12, 1117-18.   Overall, nothing in the record indicates that the ALJ was "patently wrong" when she determined that Plaintiff's RFC did not include the need for being off work 1-2 days a week to recover from seizures, or to be limited to sedentary work because of frequent seizures.

In a similar argument, Plaintiff claims the ALJ failed to include in the RFC that she would

be absent from work at least one day a week because of her migraine headaches. However, the record reflects that Plaintiff has received very little treatment for migraines. Plaintiff carried the burden of producing medical records for the ALJ to review that supported her claim of disability. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). Plaintiff does not point the Court to any records of treatment for migraines; the Court notes that Plaintiff reported migraines to her neurology nurse practitioner in October 2022 and February 2023 and she was prescribed Ibuprofen, 800 mg to be taken as needed. Given these limited references to migraines, it was not "patently wrong" for the ALJ to find that Plaintiff's testimony regarding the severity/frequency of her migraines was not credible.

Finally, Plaintiff claims that the ALJ erred by excluding the restriction stated in Dr. Donna Hudspeth's RFC that Plaintiff "should be able to meet….1-2 step tasks on a sustained basis." The ALJ wrote that "I note, however, that reference to one to two step tasks is vocationally vague." Tr. 343. Plaintiff's argument rests on her assertion that this phrase is *not* vocationally vague. Counsel for the Commissioner responds that regardless of whether the ALJ included the "1-2 step tasks restriction" in the RFC, the vocational expert opined and the ALJ found that Plaintiff could work as a housekeeper/cleaner, a job that is limited to 1-2 simple instructions. The vocational expert further testified that there are approximately 178,000 housekeeper/cleaner positions in the economy. Tr. 408. Moreover, the ALJ explained that the opinions by Dr. Donna Hudspeth (and also Dr. Lionel Hudspeth) were not fully persuasive because they did not have the opportunity to review Plaintiff's 2022-2023 medical records. Accordingly, any error that the ALJ made by noting that "the reference to one to two step tasks is vocationally vague" is a harmless error that does not require remand. *See Wilder v. Kijakazi*, 22 F. 4th 644, 654 (7th Cir. 2022). A logical

bridge exists from all of the evidence to the ALJ's decision that Plaintiff is not eligible for disability insurance benefits and supplemental security income.

### Conclusion

After careful review of the record as a whole, the Commissioner's final decision denying Plaintiff's application for DIB and SSI is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: March 30, 2026**

_s/  Reona J. Daly_
**Hon. Reona J. Daly**
**United States Magistrate Judge**